ED TAYLOR V. THE STATE.

No. 15460.   Delivered January 18, 1933.
Reported in 56 S. W. (2d) 646.

The opinion states the case.

*Sam W. Davis,* of Houston, for appellant.

*O'Brien Stevens,* District Attorney, of Houston, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for ten years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed A. L. Woodring by cutting him with a knife. Supporting the charge, the testimony of the state was, in substance, as follows: Appellant and his family had been visiting in the home of B. H. Woodring, a brother of deceased. On the day of the homicide, appellant had been drinking. Returning to the home of B. H. Woodring, he began to curse and abuse his (appellant's) wife. B. H. Woodring objected to the language appellant used and insisted that he should not use profanity in the presence of his family. Appellant became offended, and, advising Woodring that he would leave his premises, he began to pack his belongings. Appellant's wife was unwilling to go with him. This enraged appellant to the extent that he cursed his wife, and threatened to kill her. Forcing an entrance into the house, he was in the act of assaulting his wife and their two children with a knife when deceased intervened and attempted to dissaude him. Although deceased made no attack on appellant, but merely begged him not to kill his wife appellant attacked deceased with a knife and fatally stabbed him. Observing that his brother had been wounded, B. H. Woodring attacked appellant with his fists, and knocked him down several times and kicked him. During this difficulty appellant cut and stabbed B. H. Woodring. Woodring finally succeeded in overpowering appellant. He held appellant down until peace officers arrived.

Appellant did not testify in his own behalf, but introduced his wife who testified in substance that deceased and his brother were mad at appellant because they thought he (appellant) had told one Fowler, whose car B. H. Woodring had repaired, that he (Woodring) had appropriated some of the new parts Fowler had bought for his car, and, in making the repairs had substituted old and worn parts; that shortly prior to the homicide she and her husband had decided to return to their home in Louisiana; that on the occasion of the homicide her husband, after having removed some of their clothing to the truck in which they were moving, called to her that he was ready to go and came into the house; that deceased told her husband he had decided he could not leave the house that night; that her husband replied that he must go; that deceased said: "I have decided you are not going" and struck her husband with his fist, knocking him down; that after her husband fell to the floor B. H. Woodring began beating him with his fists and

kicking him; that both deceased and B. H. Woodring jumped on appellant and began beating him unmercifully; that she saw they were going to kill him and called for help; that B. H. Woodring kicked her husband on the head and in the face; that finally Mrs. Homer Woodring, wife of B. H. Woodring, ran to her husband and began kicking him; that she begged them not to kill him; that her husband drew his knife and began cutting at his assailants; that he cut B. H. Woodring across the head at a time when he was coming toward her husband with his head down; that her husband was on his knees at the time; that the parties continued the attack, striking and kicking her husband; that her husband again cut B. H. Woodring on the shoulder; that both deceased and his brother were beating her husband and knocking him to the floor every time he got up; that finally appellant stabbed deceased.

Testifying for appellant, the jailer said that when appellant was brought to the jail his forehead was skinned up to his hair, he had a big bruised place on his right arm and left leg, and his ears were "mashed down by the side of his head." He expressed the opinion that some of the injuries could not have been inflicted with a man's fist. He said: "Defendant wasn't able to be up at all when I saw him when he was injured." Further, he testified that the doctor said that several of appellant's ribs had been broken.

It is observed that appellant's assailants used only their fists and feet in making the attack. The court predicated appellant's right of self-defense upon an apprehension or fear of death or serious bodily injury. Also the jury were instructed to find against the plea of self-defense if they believed it did not reasonably appear to appellant that he was in danger of losing his life or suffering serious bodily injury at the hands of his assailants, or either of them. Appellant timely and properly excepted to the charge because of its failure to embody an instruction covering his right to defend against any unlawful and violent attack.

The opinion is expressed that the exception was well taken, and that in addition to the charge given by the court, an instruction covering the right to defend against any unlawful and violent attack should have been submitted. Article 1224, P. C., provides that homicide is justifiable "in the protection of the person or property against any other unlawful and violent attack besides those mentioned." Further it is provided that "in such cases all other means must be resorted to for the prevention of the injury." The jury might have reached the con-

clusion that the assault on appellant was unlawful and violent, but not of the nature to create in appellant's mind an apprehension of death or serious bodily injury. Assuming that such conclusion was reached, the court's charge on self-defense was calculated to prevent the jury from making application of their finding in a manner beneficial to appellant. The charge in part was to the effect that the plea of self-defense should be rejected unless the jury believed that it reasonably appeared to appellant that he was in danger of losing his life or suffering serious bodily injury. The jury found the presence of malice aforethought as evidenced by the fact that a penalty of ten years was assessed. The interpretation this court has placed on article 1224, supra, is illustrated in Andrews v. State, 101 Texas Crim. Rep., 261, 275 S. W., 1024, from which we quote: "If the assault made by the deceased was not of a nature to create in the mind of the appellant, as viewed from his standpoint, an apprehension of death or serious bodily injury and did not create such apprehension, and in resisting such assault, appellant intentionally used a weapon which, in the manner of its use, was deadly, and killed the deceased without first resorting to other reasonable and available means of protection save retreat, the jury might have been warranted in taking into account the assault made by the deceased to mitigate the offense or reduce its grade, but not to justify the homicide."

See, also, Stroud v. State, 113 Texas Crim. Rep., 621, 24 S. W. (2d) 52; Hathcock v. State, 103 Texas Crim. Rep., 518, 281 S. W., 859; Holcomb v. State, 98 Texas Crim. Rep., 456, 265 S. W., 1039.

Appellant timely requested that the inquiry touching the admissibility of the dying declaration of deceased be had in the absence of the jury. The request should have been granted. Edmondson v. State, 106 Texas Crim. Rep., 321, 292 S. W., 231. However, we deem it unnecessary to determine whether the matter presents reversible error.

B. H. Woodring was the state's principal witness. It was largely upon his testimony that reliance was had for conviction. Bill of exception No. 4 shows that upon cross-examination by appellant the witness Woodring was asked if he had not been charged in Seminole, Oklahoma, in two informations with the offense of robbery with firearms. He answered in the negative. He was then asked if he (the witness), Edward Mason and a man by the name of Polis had not been charged jointly in Oklahoma in informations with such offense. The witness answered that he knew Edward Mason; that Mason got thirty

years on a charge of robbery with firearms; that the officers came and got him and Mason and three other parties in Seminole, Oklahoma, but that he was released and no charge or information preferred against him. Upon objection by the state that the witness had not been identified as the same B. H. Woodring charged in the informations the court declined to permit appellant to introduce in evidence certified copies of said informations. One of the informations shows that B. H. Woodring, Albert Polis, and Edward Mason were charged with highway robbery in Oklahoma, in May, 1928. However, a line appears to have been drawn through the names Polis and Woodring, leaving only Edward Mason as the party charged. The other information shows that B. H. Woodring, Edward Mason, and Albert Polis were charged with robbery in Seminole, Oklahoma, on the 10th of May, 1928. We think the identification of the witness was sufficient and that the state's objection was not tenable. However, the copies of the information were not sufficiently authenticated to warrant their reception in evidence. In view of the fact that the judgment must be reversed on another ground, we deem it unnecessary to determine whether, in the absence of proper objection by the state, the trial court was warranted in rejecting the copies of the informations.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.