## EDGAR PRATER v. THE STATE.

No. 21553.  Delivered May 21, 1941.
Rehearing Granted June 25, 1941.
State's Motion for Rehearing Denied November 26, 1941.

The opinion states the case.

*Callaway & Callaway*, of Brownwood, for appellant.

*Spurgeon E. Bell*, State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a sentence of fifteen years for murder.

Briefly stated, the lengthy facts of this case show that the appellant owned a tract of land bordered on the north by land owned by Charley Moore, father of the deceased. The land sloped to the south and water from it drained onto Prater's land. The matter of drainage had been the subject of litigation between them in which Prater had lost, resulting in bad blood and reported difficulties. This was the immediate cause of the tragedy.

While appellant was engaged in digging a ditch along the line contrary to the ideas of the Moores, the deceased approached and made an attack on appellant. Being larger and stronger, he soon got the better of the conflict and inflicted minor wounds on appellant, who had first retreated in an attempt to escape from Moore. The evidence is in conflict as to what took place at this time, but the result was that appellant had a pistol and turned and shot the deceased three times, killing him instantly.

The record is before us without bills of exception, and the complaint alleged in appellant's brief is because of the failure of the court to give three requested charges. These charges are similar and will be treated together. Requested charge number one, omitting the formal part, reads as follows:

"In connection with the charges on the law of self defense heretofore given you, and to be taken in connection with same, you are instructed that if you should believe and find from the evidence that the deceased, Cecil Moore, was making an unlawful and violent attack upon the defendant Edgar Prater at the time he was killed, and you should further believe from the evidence that such attack was not of such nature or of such gravity as to put the defendant in fear of death or serious bodily injury, still in that event, if you find the facts so to be, or if you have a reasonable doubt that such were the facts, you are instructed that the defendant would have the right to shoot and kill the deceased and if you find the facts so to be you will find the defendant not guilty and so say by your verdict."

Requested special charge number two is in different language but practically to the same effect as number one.

Appellant relies on Article 1224 of the Penal Code, the pertinent part of which is as follows:

"Homicide is justifiable also in the protection of the person or property against any other unlawful and violent attack besides those mentioned, and in such cases all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack * * * * *."

It will be noted that under the circumstances described in the article, the accused must resort to all other means for the prevention of the injury as a prerequisite to his right to kill his assailant. Special requested charges numbers one and two fail to so instruct the jury and were properly refused.

Special requested charge number three applies the law to the facts of the case on trial and instructs the jury to acquit appellant if they believe, or have a reasonable doubt, that such were the facts, and instructs them in the event they find that the killing took place under such circumstances as set out, the killing would not be unlawful and would be justified. We find that paragraph number six of the court's main charge covers the same thing in language quite as favorable to appellant as that requested, and certainly as much so as the law would direct. This charge was properly refused.

Finding no error in the record, the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In our original opinion we set out Special Charge No. 1 requested by appellant, and then said that Special Charge No. 2 while in different language was to the same practical effect as No. 1. In this we were in error. We here copy Special Charge No. 2, *italicising the language which corrects the omission* from No. 1, and which brings it within the purview of Art. 1224, P. C. "In connection with the instructions heretofore given you, and as a part of the law in this case by which you are to *be governed in rendering your verdict, you are further instructed,* that even though you should believe and find from the evidence that the attack made upon the defendant Edgar Prater by the deceased Cecil Moore, if any you find was so made, was not of such character or with such weapons as to put the said

Prater in fear of losing his life or suffering serious bodily injury by reason thereof; but you should believe and find that in truth and in fact the said deceased Cecil Moore, at the very time he was killed, was in the act of making an unlawful and violent attack upon the person of the said Edgar Prater, *and that the said defendant had no other reasonable and practical means of preventing the said attack,* then in that event, if you so find the facts to be, or if you have a reasonable doubt thereof, you are instructed that the defendant would have a right to shoot and kill the deceased, and if you find that the killing of the deceased Cecil Moore took place under the circumstances and conditions above stated, or if you have a reasonable doubt thereof, you will acquit the defendant, and say by your verdict 'Not guilty'."

We have again examined the evidence and without setting it out, express the opinion that appellant's testimony was such that if believed the jury might have reached a conclusion that the attack on appellant was unlawful and violent, but not of a nature to create in appellant's mind an apprehension of death or serious bodily injury. If such conclusion should have been reached by the jury they were without information as to the law under such a finding. See Taylor v. State, 122 Tex. Cr. R. 507, 56 S. W. (2d) 646, and cases there cited.

A further consideration of the case leads us to the conclusion that the trial court should have given Special Charge No. 2 or one of similar import.

Appellant's motion for rehearing is granted, the judgment of affirmance is set aside and the judgment of the trial court is now reversed, and the cause remanded.

### ON STATE'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

It is urged by the State in its motion for rehearing that the evidence does not present a case calling for an instruction under Art. 1224 P. C. which in so far as here applicable reads as follows: "Homicide is justifiable also in the protection of the person or property against any other unlawful and violent attack besides those mentioned, and in such cases all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack, * * *"

The latest expression of this court upon the subject is in the recent case of Fambro v. State, 21,569, opinion on rehearing October 22, 1941, reported 154 S. W. (2d) 840. (Page 473 of this volume). We adhere to what was there said, that it is not in every case where self defense is an issue that the court is called upon to charge the principle contained in the article quoted, but only in cases where the evidence, direct or circumstantial, fairly raises the issue making such statute applicable. In the opinion on appellant's motion for rehearing delivered on June 25, 1941, we indicated that in our judgment the evidence called for an instruction under said Art. 1224, but did not deem it necessary to detail the evidence upon which such conclusion was based. The State combats the correctness of such conclusion so vigorously we tersely call attention to the testimony upon which the conclusion rests. It will, of course, be understood that we express no opinion as to whether the evidence is true or otherwise, that being a matter for the jurors. We are concerned only with the proposition of whether the evidence raised an issue upon which the jury should have been advised as to the law.

The Moore land and that of appellant was separated by a fence, and their land cornered on the line of Crutchers' land upon which line was a fence between the Crutcher land and that of Moore and appellant. It was undisputed that trouble and bad blood had arisen and had existed for a long while between appellant and the Moores regarding surface water along the line between their lands.

Appellant's story of the homicide detailed to the jury is substantially as follows: On the day of the homicide he was upon his own land near where it cornered with the Moore land on the Crutcher line working with a long handle shovel opening a ditch to drain the water from appellant's land on to the Crutcher land. The water so drained would not have gone on the Moore land. Deceased, (Cecil Moore) came to the fence separating their lands and abused appellant for opening the ditch and cursed him in vile language. Deceased came over the separating fence in a threatening manner, but at the command of appellant got back over the fence on his own side. Further words were exchanged between them and deceased again came over the fence and attacked appellant. Deceased was striking with his fists and hit appellant a number of blows. Deceased was a strong, vigorous man and appellant was no match for him in a physical encounter. Appellant was "beat

down, nearly falling and give out." Appellant dived or crawled under the Crutcher fence to get away from deceased who "stomped" appellant as he crawled under the fence, and then followed him into the Crutcher field and was within seven or eight feet of appellant when he got his pistol out and fired. At this point we quote from appellant's testimony. ·

"* * * Cecil came over this fence into my place and fought me; and he followed me through the fence into the Crutcher field and I shot him somewhere out in that field; * * *"

"I shot Cecil Moore because I was afraid of him. I thought he was going to hurt me or kill me; I thought that he was going to kill me. I did not think that I could fight Cecil; if I had been in the best health on earth I could not have fought Cecil Moore. * * * He could have stomped me to death or killed me with his bare hands. * * * I would not have shot Cecil Moore or killed him if I had not thought that he was going to hurt me; I would not. In my judgment I thought then and I think now that it was necessary for me to shoot him in order to stop him from doing me physical violence and injury; I shot him to keep him from getting hold of me."

"He hit me time and again. I do not know how many times he hit me but he hit me real hard. It might be that he did not hit me on the face but he did on the neck and around the head. He was a big strong man but he never did knock me down. I do not know how many times he hit me in the face but it was six or seven times. I was backing or walking. I was trying to make my way to the house. I had started home. And then I started to run under the fence. And I went way back over here. I went out into this field, just about in this direction, * * * I do not know why I ran this way instead of that way except that to have run that way I would have had to run over him. He had me about beat down and the only thing I could do was to try to get out of danger. * * *"

Neither in appellant's direct or cross examination does he explain what became of the shovel and the thought naturally arises that he might have resorted to that rather than to have used a pistol against an unarmed assailant. However, through a res gestae statement made by appellant to his son appellant throws light on what became of the shovel. The son testified as follows as to what appellant said.

"My father told me about having that shovel over there on the inside of his place; and he told me what he was doing. He had a shovel but the handle was not so long and the shovel was not so big. He was in a difficulty. He did not say anything about using that shovel; he just said that he threw it down and ran. He said that he turned back then; he did not say necessarily to run but to get out of the way of Cecil Moore. He did not say anything about that shovel except that he dropped it. * * * Instead of going down his field fence he went through into the other field, because Cecil was trying to catch him and he was trying to get away from him."

The undisputed facts are that the killing occurred in the Crutcher field. The State's evidence is sharply variant from that of appellant as to how or why the parties got into the Crutcher field, but such testimony is not here set out because we are concerned only with appellant's evidence to ascertain if it called for an instruction applying the principle set forth in Article 1224 P. C.

Our law does not require one to retreat in order to escape the necessity of killing his assailant although he may be defending against an attack threatening less than death or serious bodily injury. It does require him to resort to all other means to prevent injury to himself before he kills. According to appellant's story—whether true or not—he discarded the shovel and did retreat and was pursued by his assailant and the killing occurred—under appellant's version—as herein set out.

We remain of opinion that the evidence raised an issue which demanded that the jury should have been advised as to the principle of law announced in Article 1224 P. C.

The State's motion for rehearing is overruled.