TONY DE LA GARZA, JR., V. THE STATE.

No. 23831. Delivered December 17, 1947.
Rehearing Denied (Without Written Opinion) January 21, 1948.

*Leonard Brown,* of San Antonio, for appellant.

*William N. Hensley,* Criminal District Attorney, and *Robert Sawtelle,* Assistan Criminal District Attorney, both of San Antonio, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appellant was given a sentence of two years in the penitentiary upon his conviction for murder without malice.

The record is before us without bills of exception, but we find two objections to the court's charge demanding our consideration. The facts of the case disclose that a fight arose between two groups of Mexican boys, over a most trivial matter. Appellant and his witnesses tell of going into a cafe at 12:30 in the morning, after attending a dance at some place, and finding deceased and two other boys at a table. They selected a table a short distance away. Some of the parties knew each other and, apparently, some did not. Defendant says that his

crowd ordered their meal and then put a coin in the machine to get some music. When it began playing it was the same tune they had been listening to while at the dance. Because of this they all laughed and their doing so incensed deceased and his companions who had the impression they were being laughed at. The insulted party asked some questions and the answers given explained the cause of their action and should, if made, have satisfied the group. The companions of deceased, however, told a different story. They say that when appellant and his party came in and the waitress approached them they told her they wanted the same thing the other fellows had, but the language they used in describing it incensed the deceased and his party. This caused some words to pass. In any event, the deceased and his companions left the room but returned in a few seconds.

According to appellant, one of the parties upon his return picked up a salt cellar and threw it at the appellant and his companions, but missed them. The State witnesses denied this, but gave no statement as to what caused the two parties to run together. The deceased and another approached appellant and his party and engaged in a difficulty, the nature of which is not described. The appellant knocked one of them down and then, looking around, saw his brother "* * * having it out with Clemente (the deceased)." Appellant then moved forward a little bit and tried to separate them. He says, "I seen this Clemente with his hand in his pocket. He backed out and I went in between them and when I seen him with his hand in his pocket I put my hand in my pocket because I had a small knife and I thought he was going to pull a knife. Then he jerked his hand out and before he got it all the way out I struck him just like that." This was the lick with the knife which inflicted the fatal wound and terminated the fight.

The court gave a charge on the right of self-defense and the right to defend his brother, which apparently is satisfactory except that the defense requested the court to give a charge on his right to defend against a milder attack. Reliance is had on Article 1224, of the Penal Code, and the Court's opinion in Prater v. State, 155 S. W. (2d) 934 and Witty v. State, 203 S. W. (2d) 212.

The Prater case was reversed on motion for rehearing because the court's charge did not comply fully with Art. 1224 of the Penal Code. The holding of the majority in that opinion, and the law thus announced, should be followed, but the writer

does not believe that the facts of the instant case require the charge requested. There is no evidence in the instant case and no indication that the appellant resorted to the only means at hand to defend his brother from the attack which was being made, which must be the basis for claiming the charge provided for in Article 1224 P. C. Furthermore, it appears that if appellant cut the deceased under the belief that deceased was pulling a knife for the purpose of cutting his brother, certainly he was defending against a threat to do serious injury, and the charge gave him every defense required under the circumstances.

The next question raised by the appellant is that the facts were insufficient to show that deceased died of the wound inflicted. We find but a general objection to the court's charge on this subject. However, the question may be considered in the state of the record.

The wound was a stab wound which went into the intestines. The victim was taken to one hospital, which appeared to be after 12:30 in the morning. A few hours thereafter, and before daylight, he was taken to the Brooke General Hospital and was given the attention of a physician who minutely described the wounds and the cause of his death. According to the description of the wounds by the doctor it hardly appears probable that his life might have been saved. Furthermore, we see in the record no evidence of gross negligence in handling him which became the intervening cause of death. The doctor says, "The immediate cause of death was peritonitis and the fact the patient had hemorrhage. It is purely speculative to say what effect an immediate treatment given in half an hour would have had. That is a case for conjecture." His testimony gave the cause of the death and there is nothing in it to even raise an issue much less to conclusively show that there was gross negligence in the handling of the patient. The evidence is sufficient to support the conviction. See Lerma v. State, 200 S. W. (2d) 625, and 78 L. R. A. 755, et seq.

Finding no reversible error, the judgment of the trial court is affirmed.