## M. M. HAYS v. THE STATE.

### No. 2652. Decided February 11, 1914.

### Rehearing denied March 18, 1914.

**1.—Murder—Continuance—Insult to Female Relative.**

Where defendant, in his first application for continuance for the absence of his wife, who was physically unable to attend the trial, showed that he could prove by her that she had communicated to him what the daughter had said with reference to the insulting conduct by deceased towards her, the continuance should have been granted, although the daughter had testified that she communicated to her mother such insulting conduct by the deceased, etc.

**2.—Same—Evidence—Written Statements—Confronting Witnesses.**

Upon trial of murder and a conviction of manslaughter, it was error to admit in evidence the written statements of certain witnesses as to their acts

and conduct towards the deceased while they were in his employment with defendant, as defendant was entitled to be confronted by these witnesses.

**3.—Same—Evidence—Declarations of Deceased—Limiting Testimony.**

Upon trial of murder and a conviction of manslaughter, it was error to admit in evidence the declarations of the deceased to his wife with reference to his financial affairs, etc., to lay the predicate of impending death, without limiting the same to such purpose, the same not being a part of the dying declarations.

Appeal from the District Court of Tarrant. Tried below before the Hon. James W. Swayne.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Lattimore, Cummings, Doyle & Bouldin,* and *W. M. W. Splawn,* and *Tom Bradley,* for appellant.

*C. E. Lane,* Assistant Attorney-General, and *John W. Baskin,* County Attorney, and *A. J. Baskin,* for the State.—On question of continuance: Reinhardt v. State, 60 Texas Crim. Rep., 662; Morgan v. ·State, 54 id., 542.

DAVIDSON, JUDGE.—Appellant was convicted of manslaughter, his punishment being assessed at five years confinement in the penitentiary.

The theory of the State was that appellant being an employe of the railroad, while in the discharge of his duties permitted some cars to be pilfered, and for this reason was discharged. It is further the theory of the State that on account of this he harbored ill-will and bad feeling towards the deceased, Boswell, who seems to have been in charge of that particular department of railway service. There is evidence showing that appellant felt sore and outraged over his discharge. The theory of the defendant is that his sixteen-year-old daughter was sent by his wife to see the deceased with a view of getting her father, appellant, reinstated. When she approached deceased he requested her to go with him to his uptown office. She did so and as they were ascending the flight of steps leading to the office he told her that if she would submit her person to him he would reinstate her father. She became outraged, and, having declined to accede to his proposition went home, and informed her mother of what had occurred. Her mother subsequently over the telephone informed appellant of what the daughter had said. The girl herself did not inform her father. Subsequently to being so informed by his wife he procured a gun, went to the office of the deceased, and said to him that he had taken bread and meat from his family and deprived him of making a living for them, and appellant testified in addition he had sought to ruin his family. That deceased got up and started in the direction of his private office, which was near by, and appellant shot him.

1.   When the case was called for trial appellant sought a continuance for the testimony of his wife, who it is shown was physically unable to attend the trial, and about this there seems to be no question.   He desired to prove by her the fact that she had communicated to him what the girl had said, and also that the girl had made the communication to her, and further that appellant's mind was very much excited and outraged on account of these communications.   We are of the opinion that this application should have been granted. . It was the first application; no question about the materiality of the testimony, and of the inability of the witness to attend the trial.   While the girl testified that she communicated to her mother the insulting conduct by the deceased, and appellant testified that his wife had informed him of it, yet the absent witness would have corroborated both witnesses as well as showed the effect of these communications upon the defendant in regard to the excitement.

2.   Another bill of exceptions recites the State was permitted to introduce in evidence the written statements of L. C. Wood and L. M. True.   They state, in substance, that appellant and themselves were working in the transfer yard of the railroad company, and that Wood and True entered a box car and took from it some chili con carne.   Wood, True and defendant were in the employ of the railway company at that point and in those yards.   Various objections were urged to the introduction of these statements.   These objections are well taken.   If appellant made statements or heard the statements of these men made to Boswell, the deceased, who was in charge of the yard, to the effect that True and Wood got these goods with appellant's permission, and that this was the moving cause for his discharge from the railway service by the deceased, Boswell, it was admissible upon the question of motive or ill-will as against Boswell.   But the written statements of these two men could not be introduced.   Appellant was entitled to be confronted by these witnesses and have them testify to the facts.   This testimony was introduced as original testimony and not impeachment.   This was error.

3.   Another bill recites that while the witness, Wallace, was testifying for the State, over the objections of appellant, he was permitted to testify that soon after the shooting of the deceased he, Wallace, went into the depot where deceased was, and deceased's wife came in, and deceased said to her, "Sweetheart, I have made ample provision for you and I have done the best I could by you.   You know where my land papers are and my insurance policies."   After this was introduced appellant asked the court to limit this evidence to the question of establishing the admissibility of the purported dying declaration, which was by the court refused. The court signs this with the explanation:   "That this was allowed to show the condition of deceased and that he knew of pending death."   Of course, the State could prove by legitimate testimony as a predicate for the introduction of the dying declarations, that the deceased recognized the fact that he was going to die, but this testimony, if admissible for that purpose, ought to have been limited to it.   The court says he

admitted it to show the fact that deceased knew he was going to die, but he does not so inform the jury. It was not necessary to show as the court called it "pending death" by such statements made by deceased, but if the court thought it was proper to admit this on that theory, it should have been limited as contended by appellant for that purpose. It was damaging to say the least of it. There was a man who, as the court says recognized he was going to die; his wife came in and found him in that condition; he was telling her about their financial affairs, and how he looked out for her future wants. This was calculated to affect the jury, and, if not properly guarded, detrimentally. This was not and could not be original testimony, nor part of a dying declaration. It could only be admissible, if at all, as a predicate for the introduction of the dying declaration.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Rehearing denied March 18, 1914.—Reporter.]