## W. H. STROUD V. THE STATE.

No. 16915. Delivered October 17, 1934.
Rehearing Denied January 2, 1935.
Reported in 77 S. W. (2d) 237.

The opinion states the case.

*Williams & Bell,* of Childress, and *John A. Storey,* of Vernon, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder, and his punishment assessed at confinement in the State penitentiary for a term of five years.

This is the third appeal of this case. The disposition made of this case on the former appeals will be found reported in 24 S. W. (2d) 52 and 46 S. W. (2d) 689. The facts in this case are not materially different from those upon the former appeal which are fully set forth in the report of this case appearing in 24 S. W. (2d) 52, and therefore we will not undertake to restate the facts fully but will only state so much thereof as may be necessary for a clear understanding of the questions raised and the disposition made thereof.

The record discloses that at a Democratic Primary Election held within and for the county of Wilbarger on the 25th day of August, 1928, there were two candidates for the office of sheriff, to-wit, Frank Edmondson, the then present incumbent, and Bob Rhea. On the afternoon of August 25, 1928, the appellant and deceased made a bet on the result of said election. The appellant bet $50 that Edmonson would receive a majority of the votes while deceased bet $50 that Rhea would receive a majority of the votes. Each one wrote a check in the sum of $50 payable to cash and said checks were inclosed in an envelope and deposited in a filing cabinet with a lock on it belonging to the appellant. Mr. Rhea received a majority of the votes at said election. On Saturday following the day of the election, the deceased came to the town of Odell, walked up to where appellant was sitting on the running board of his car, and demanded the checks, to which appellant replied, "All right, the check is in there just like we put it up. I will get it." The deceased said, "I want both checks," whereupon appellant replied, "Well, you understand I withdrew the bet"; the deceased said, "Yes, but I thought you were joking and I want both of them or I am going to whip hell out of you." The deceased then asked appellant to take off his glasses and when appellant did so the deceased struck him. In the altercation deceased was cut in the chest with a knife which penetrated the abdominal cavity resulting in his death about four days later. The appellant's plea was self-defense, and in support of his plea he testified that deceased struck him the first lick in the ear with a knife, causing blood to flow freely from said wound; that de-

ceased continued his attack upon him with a knife, whereupon appellant drew his knife and struck deceased one time somewhere in the body; that he hit the deceased only once and did so because he was afraid that deceased was going to kill him or inflict serious bodily injury upon him and that he did so to protect himself and did not intend to kill deceased.

The court charged on murder with and without malice aforethought, on aggravated assault and battery, and self-defense.

By bill of exception No. 1 appellant complains of the action of the trial court in permitting the State to introduce as evidence a purported written dying declaration because no proper predicate had been laid for its introduction and because it was not shown that the statement was not made in response to interrogatories nor was it shown that at the time it was signed deceased was conscious of approaching death, etc. This same question was raised by the appellant on his second appeal and was decided adversely to his contention and has now become the settled law of this case.

By bill of exception No. 2 the appellant complains of the action of the trial court in not permitting Dr. M. J. Moore to testify that the wound about appellant's ear could not have been made by a signet ring as contended by the State; that the ring, considering its size, shape, and character, could not have reached as far down in the ear where the wound was located. Dr. Moore testified that he examined the appellant just after the difficulty and found wounds on his left ear and on the side of his face. The wound in his ear was just a cut in his ear, just deep enough that it was bleeding; it was not a serious wound; that the wound was made with a cutting instrument. The wound was not sufficiently deep to require any stitches; it was just a skin abrasion or cut. We fail to see how the action of the trial court was hurtful or prejudicial to the appellant. There was no direct or affirmative testimony that the wound was made with a signet ring. All that the State did was to prove that the deceased wore a signet ring at the time he received the fatal injury, and this ring was introduced as evidence. It may be that the State intended to draw an inference from said facts that the wound was inflicted with the ring. The doctor had already testified that the wound was made with a cutting instrument, which was tantamount to saying that it was not made with a signet ring because a signet ring is in no sense a cutting instrument. It was clearly the province of the jury to determine from the character of the wound as described by the doctor and his opinion that it was made with a cutting instru-

ment, together with all other testimony as to the condition of deceased's knife soon after the difficulty, whether the wound was made with a knife, with a signet ring, or with the nail of deceased's thumb. The appellant's ear was exhibited to the jury; the ring was before them, and from its size, shape, and character the jury were capable of determining whether the wound was inflicted with a signet ring or not. It would not take expert testimony to demonstrate that a rope six feet long would not reach the bottom of a well twelve feet deep, nor would it take expert testimony to demonstrate that a peg one inch in diameter would not fit a hole one-half inch in diameter. We have examined the authorities cited by the appellant in support of his contention and agree that they state a correct rule of law, but we think the same are not applicable to the facts in this case, and therefore overrule the appellant's contention.

The appellant urged a number of objections to the court's main charge and requested the giving of a number of special charges, but inasmuch as most of them have been passed upon by this court on appellant's second appeal we deem it only necessary to consider those objections not heretofore raised. One of the appellant's objections to the court's charge is that the court did not limit the testimony of Dr. King and Mrs. Luther Streit as to the condition of deceased and his statement to them at the hospital, the purpose of which was to lay a predicate for the introduction of a dying declaration. For a better understanding of the disposition we are making of the case we deem it proper to briefly state the testimony of said witnesses. Mrs. Streit testified as follows:

"I was at the hospital at the bedside of deceased on the day following the day on which he received the fatal wound. Deceased had apparently been asleep; he woke up, opened his eyes, and when he saw me looking at him he motioned for me to come to the bed. I went over and said, 'Wayne, how are you feeling?' He said, 'Awful bad, Hass, I am a mighty sick man, I am afraid I won't make the grade.' Yes, I was present at the time the written statement was made. It must have been 11 or 12 o'clock that night. Mr. O. O. Franklin, the District Attorney, just told Wayne Lawson that he was there to ask him if he wanted to make a statement; Wayne told him, 'Yes.' Mr. Franklin wrote out the first part of the statement and read it over to Wayne and then said, 'Now, Mr. Lawson, that is all I can say; you go ahead and state the events as they occurred,' and Wayne went ahead but became exhausted and would stop

for a few minutes and rest and then go on with the story. After the statement was finished it was read over to Wayne before it was signed; Wayne said that it was correct."

Dr. King, after testifying to the wound he found on deceased, the nature and extent of same, and his physical condition as a result of said wound, said:

"Yes, Franklin told him he was going to die; I know he told him that he wanted to get a statement from him. At the time the statement was made I think Wayne was sane; he was conscious, he talked rationally, in making the statement; Wayne had to be led along some; I mean by that Franklin would have to spur him on, tell him what he was talking about, that is, tell him where he had stopped."

It is our opinion that the court did not commit any reversible error in failing to limit the testimony to the purpose for which it was admitted as contended for by the appellant. It is true that if testimony can be or may be appropriated by the jury to another or different purpose from that for which it is admitted, that the court should in his charge to the jury limit the jury's consideration of same to the purpose for which it was admitted, but where the testimony cannot reasonably be appropriated by the jury to any other purpose than that for which it was admitted, it is not error for the court to fail to limit the same. In the case under consideration the jury could not have appropriated the testimony to any other purpose than that for which it was admitted. We therefore overrule the appellant's contention, and in support of the opinion herein expressed we refer to the following authorities: Sue v. State, 52 Texas Crim. Rep., 122; Smith v. State, 147 S. W., 240; Manley v. State, 153 S. W., 1140.

We have also examined all other objections to the court's charge and reach the conclusion that the same do not present any error. The appellant objected to isolated parts and paragraphs of the court's charge, but in determining the adequacy and sufficiency of the same, the charge must be considered and construed as a whole, and when thus considered if it properly and pertinently applies the law to the facts and affirmatively instructs the jury on defendant's defensive theory, the charge is sufficient. But aside from this, most of the objections urged now were urged by the appellant on his next preceding appeal and were decided adversely to appellant's contention. The appellant submitted to the court in due time the following special charge: "You are charged as part of the law of this case the following: That the election bet, if any, between deceased,

Lawson, and the defendant was unlawful, and if you find from the evidence that deceased made an attack upon defendant for the purpose of obtaining possession of defendant's check, then such attack, if any, was unlawful and the defendant had a right to resist such unlawful attack and to use such force in repelling such unlawful attack as it reasonably appeared to defendant, viewed from his standpoint at the time, to be necessary to protect himself from death or serious bodily injury at the hands of deceased." The opinion is expressed that the failure to give this charge was not error. The assault, if any, made by the deceased on appellant was not unlawful because the election bet was unlawful; the assault would have been unlawful whether the election bet was lawful or unlawful. The failure or refusal on the part of the appellant to turn over the checks to deceased would not authorize or justify the deceased in making an attack on the appellant, and such attack could not become lawful even though the object was to obtain possession of property in the possession of the party whom he attacked. We therefore are forced to the conclusion that the failure to submit said charge was not error.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Upon facts the same as appear in this record, upon a former appeal, we said: "The ommission from the charge of an instruction on the law of defense of property, is deemed correct." Appellant stresses in his motion his right to have a charge given the jury presenting this theory. The right to defend on such grounds seems entirely lacking, in supporting testimony. The check demanded by deceased of appellant immediately before the difficulty,—upon defense of which demand appellant seems to predicate his claim of a killing in defense of property,—was not in the pocket of appellant or on his person, but was at some place in a lock box or other receptacle when the difficulty took place. Argument or further statement is not deemed necessary to demonstrate that in our opinion appellant was not entitled to an instruction upon the right of defense of one's property. The authorities cited by

appellant seem to be upon altogether different facts and have no application.

It is again urged that this court should have held it erroneous for the trial judge to refuse appellant's special charge seeking to have the jury told that the bet made between appellant and deceased was unlawful, and hence the attack upon appellant because he would not deliver the check put up,—was also unlawful. If the the attack of deceased had for its object to force appellant to turn over to deceased said check, this could not have given appellant any greater right of self-defense than was accorded him in the charge of the court as given, in which the court told the jury that appellant had the right to defend against any unlawful and violent attack by deceased. We are still of opinion that there is nothing to this point.

So also since appellant was given his free and full right of self-defense as against an unlawful and violent attack by deceased, we can not agree with his insistence that Dr. Moore should have been allowed to testify that in his opinion the signet ring worn by deceased could not have made the slight cut observed on the ear of appellant, when examined by Dr. Moore after the difficulty. While appellant said deceased struck him in the ear, and that this was the first blow in the difficulty, and that deceased had a knife or some small instrument in the hand with which he struck, appellant also detailed twelve or fifteen blows struck by deceased thereafter and before appellant struck or cut deceased inflicting the fatal wound. Dr. Moore said that appellant's ear was not seriously wounded; that the wound caused some blood. If deceased had a closed or opened knife in his hand, appellant did not claim to have seen it, and the wound inflicted was not more serious apparently, than could have been inflicted by a blow from a hand with a ring on it. The court placed no restriction on appellant's right of self-defense based on the character of the attack by deceased, or the instrument in the hand of deceased, and we are not able to agree that the rejection of the testimony of Dr. Moore could have injured appellant's rights.

We are still of opinion that the jury could not have failed to use for the purpose of determining whether deceased was conscious of approaching death,—the statement complained of in the testimony of Dr. King and Mrs. Streit set out in our original opinion. Such being our view, it would follow that no error appears in refusing the special charge limiting the purpose for which said evidence could be considered. If it could be considered but for one purpose, it manifestly would not be error

to fail or refuse to tell the jury that they could only consider it for the purpose for which it was intended. We see no application of what we said in Hays v. State, 164 S. W., 841.

The court below, as applicable to murder with,—as well as murder without,—malice, told the jury in paragraph fifteen of his charge, that before they would be warranted in finding the accused guilty of murder, they must find and believe beyond a reasonable doubt that he had a specific intent to kill at the time he cut deceased with his knife. He also told them that they could take into consideration all the facts and circumstances in evidence, both those occurring at the time of the killing and prior thereto, in determining whether the mind of the accused was,—at the time,—aroused by sudden passion, rendering him incapable of cool reflection, and that if so, and the cause thereof was such as would commonly produce that condition in the mind of a person of ordinary temper,—they could not give appellant a higher penalty than five years. We find nothing in this charge subject to appellant's criticism. There are other matters appearing in the motion, each of which has been considered, but in none of them do we find any error upon which a reversal might be predicated.

The motion for rehearing is overruled.

*Overruled.*