KENNETH W. WITTY V. THE STATE.

No. 23531. Delivered April 30, 1947.
Rehearing Denied June 28, 1947.

556

J. C. Darroch, of Brownwood, Fielding Hammond, of Burnet, and Willard McLaughlin, of Waco, for appellant.

Ernest S. Goens, State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Felton Waddell, his wife, Gladys Waddell, and family resided upon a farm about five miles from Goldthwaite. Ramsey Waddell, a bachelor brother, lived with them. Kenneth Witty (appellant), his wife, and family resided upon an adjoining farm. The two residences were about a half mile apart. A public road, a rural free delivery route, separated the two farms. The Waddell residence was near the road. Appellant's residence was not on a rural route. He, together with four other residents of the community, received mail at boxes upon a rack or platform erected at the edge of the road immediately in front of the Waddell residence and upon land belonging to Waddell. To reach his mail box, appellant had to cross his field and go over a stile. The mail carrier usually passed the boxes around the noon hour. It was the custom of those awaiting his arrival to stay under the shade of trees back of the mail boxes and between the boxes and Waddell's yard-line fence. Up until March, 1945, the relations existing between the two families were friendly and neighborly.

About the time mentioned, Witty's daughter left home for a visit in another section of the State. Mrs. Witty heard that Mrs. Waddell had said, and was spreading as a rumor, that the daughter had run away from home. She became so disturbed about what she had heard that she went to see Mrs. Waddell and challenged the truth thereof, explaining that the daughter had not left home permanently but was away only upon a visit. As a result of this rumor and incident, the amicable relations existing between the families were completely disrupted.

As to what happened thereafter, we state, first, the appellant's version, as shown chiefly by his own testimony and that of his wife.

Following the incident above mentioned, Felton Waddell and his wife began a studied course of ill-treatment towards Mrs.

Witty and to harass, tease, and embarrass her. On two occassions, grass burrs had been placed under the trees where Mrs. Witty customarily sat while waiting for the mail carrier. On July 31, Mrs. Witty went to the mail box and was sitting in a chair she found under the trees when Mrs. Waddell came out of her house and ordered her to get out of the chair, saying at the time, "Your bottom isn't good enough to sit in one of my chairs." Mrs. Witty gave Mrs. Waddell the chair and sat down under the trees. Thereupon, Felton Waddell came out of the house and ordered Mrs. Witty to get off their land. This was followed by an assault upon Mrs. Witty with a board by Mrs. Waddell, while Felton Waddell held her. The arrival of the mail carrier stopped the assault. Mrs. Witty was pretty badly bruised as a result of the assault. The day following, a fence was constructed around the trees so as to prevent anyone standing thereunder and forcing those waiting for the carrier to stand in the sun. Later, the trees were cut down.

Following the assault, Mrs. Witty reported the attack upon her to peace officers and to the county attorney, to whom she exhibited the injuries received by her.

At the time of the assault, appellant was not at home; he was in West Texas supervising a crew in harvesting a potato crop. Mrs. Witty wired appellant to come home, which he did. She told her husband of the acts, conduct, and assault on the part of Mrs. Waddell and Felton Waddell. Appellant told his wife that, inasmuch as they had beaten her, he did not think they would do her further injury, and returned to West Texas in connection with the potato harvest, as he was urgently needed there.

Other and additional harassing conduct was visited upon Mrs. Witty and her children, the details of which need not be stated.

Appellant returned from West Texas on August 28th. He contacted the sheriff and others regarding the assault upon his wife, and sought the advice of counsel in the matter. He ordered delivery of his mail over the rural route discontinued and, instead, got his mail at the post-office. He contacted Felton Waddell, told him what his wife had related to him as to the assault, the acts and conduct towards her and sought an explanation thereof. Some of the acts, including the assault, Waddell admitted. On this occasion, Welton Waddell challenged appellant to fight—which appellant refused to do because of the superior

strength and physique of Felton Waddell. Thereafter, Felton Waddell, Ramsey Waddell, and appellant met in Goldthwaite, at which time trouble was again avoided. Appellant placed his farm on the market for sale, with a view of moving out of the community, insisting that he was trying to avoid serious trouble between the Waddells and himself.

Such were the conditions existing, according to appellant's viewpoint, on the day of the killing (September 25, 1945.)

On that morning, appellant went with Lewis, his brother-in-law, in a truck to see Barton, a neighbor. On this trip he passed along the road in front of the Waddell home. He returned home about eleven o'clock. Knowing that his wife was going to the mail box to mail a package, he went into his field, carrying with him a 30-30 rifle which he had just recently purchased. He admitted that he was present at the time and place with the rifle for the purpose of protecting his wife in the event she was attacked by the Waddells, as had happened on the prior occasion. Along and inside appellant's fence-line adjacent to the road was a row of brush and thick undergrowth. While crossing his field he heard what he termed a "racket" between Mrs. Waddell and his wife at the mail box. He started in that direction and as he got to a "thinned out place in the brush" he saw Felton Waddell, Ramsey Waddell, and Mrs. Waddell advancing upon his wife.

As to what then happened, we quote from appellant's testimony:

"I fired a warning shot and hollered, get off that woman or I will kill you. By that time they had got out in the road and Felton had caught hold of my wife by her arm and Ramsay had her with his right arm around her neck, and he was hitting her on the shoulder with his left fist. Gladys hadn't gotten a good hold, so she just ran along by the side.

"When I hollered at them to turn that woman loose or I would kill them, Felton turned aloose and kinda turned around and said, we are going to whip her * * *. Then I shot him, and the next thing he said was, * * * I am dying. Those were his next words. He fell kinda backward on his heels and fell on his elbows right in the center of this road. It could have been a little to one side or the other, but it was right close to the center.

"Ramsay was still on my wife and I hollered at him again, get off of that woman or I will kill you. He did not turn her loose

and then I had to pull that awful long hard·shot. I don't know where I hit him because I didn't observe for the reason that I didn't want to remember. I do not know where I aimed. I am considered a good rifle shot by lots of people.

"I did shoot Felton Waddell. When I shot him he fell back on his heels and fell on his elbows like this.

"After I had shot Felton, the fight was still going on. Ramsay had my wife around the neck something like this. They were at the northeast end of the mail box. Gladys was pushing on her. From the way she was acting, they were trying to carry her somewhere. I don't know whether they were trying to push her in the yard gate or not. By that·time they had missed the yard gate and were on up towards the garage. I saw Ramsay hit my wife on the jaw and then he straightened back a little, and that is when I clipped the top of his head off. That was all I could see. He had my wife like this and they were kinda going up and down. I started at the bottom of his feet with that gun and went all the way up on him. His head was just above my wife's head and I did not miss her head that far (indicating) when I shot. Now, that is the truth and nothing but the truth."

Appellant was about sixty yards away when he fired the fatal shots. Following this, he went immediately to his wife, who, he found, was considerably bruised and beaten.

It is for the murder of Ramsey Waddell that appellant was here convicted and his punishment assessed at fifteen years in the penitentiary.

In view of the questions presented for review, it is not deemed necessary to detail the State's testimony further than to say that it was sufficiently shown thereby that, on the morning of the killing Mrs. Witty went to the mail boxes with no intention of mailing a package but to bring about an occasion or opportunity for the appellant to shoot and kill the Waddells from ambush—which he did, without justification or excuse, and that no assault or attack upon Mrs. Witty was perpetrated by anyone.

From the standpoint of the State, the case was submitted to the jury upon the law of murder with and without malice; from the standpoint of the appellant, upon defense of the wife.

In submitting murder without malice, the jury was instructed, after the statutory definition of that term (Art. 1257c, P. C.), as follows:

"Any condition or circumstances or combination of circumstances, either taken alone or together; which would commonly produce in the mind of a person of ordinary temper, and which does in fact create in the mind of the defendant any such passion, anger, rage, resentment, or terror, rendering the mind incapable of cool reflection, is deemed adequate cause.

"And where there is one or more causes raising such emotion of mind, it is for the jury to determine whether or not any or all of such causes combined, if there are any, might be sufficient to do so.

"It is your duty in determining the adequacy of the cause to consider in connection therewith all the facts and circumstances in evidence in the case, and if you find that by reason thereof, the defendant's mind at the time of the killing was incapable of cool reflection, and that said facts and circumstances would commonly produce such state of mind in a person of ordinary temper, then the proof as to the sufficiency satisfies the requirements of the law, and so, in this case, you will consider all the facts and circumstances in evidence, in determining the condition of the defendant's mind at the time of the alleged killing and the adequacy of the cause producing such condition."

Appellant insists that he was entitled under the facts to have the jury further instructed in connection with the above-mentioned charge that they, the jury, should take into consideration certain specific facts in evidence, as constituting adequate cause.

In Mosley v. State, 196 S. W. (2d) 822, we said:

"Art. 1257c, P. C. governs the submission of the question of murder without malice. A compliance therewith by a trial court is all that is required. For a trial court now to pick out any particular fact or set of facts in the evidence and instruct the jury that if they believed such fact or facts the killing would—as a matter of law—be one without malice, would of necessity constitute a charge upon the weight of the evidence.

The charge, as given, was sufficient.

The right of appellant to defend his wife was submitted from a dual standpoint—that is, appellant was authorized to

defend his wife against the joint attack, as well as several, of Felton Waddell, Ramsey Waddell, and Gladys Waddell, threatening death or serious bodily injury, and also the attack, less than deadly, of Ramsey Waddell, as provided in Art. 1224, P. C.

Said Art. 1224, P. C. reads as follows:

"Defense against milder attack

"Homicide is justifiable also in the protection of the person or property against any other unlawful and violent attack besides those mentioned, and in such cases all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack, and any person interfering in such case in behalf of the party about to be injured is not justified in killing the aggressor unless the life or person of the injured party is in peril by reason of such attack upon his property."

In submitting such lesser attack, after stating the law relative thereto, the jury was instructed as follows:

"Therefore, in this case you are instructed that although you may find and believe from the evidence beyond a reasonable doubt, if you do, that the defendant Kenneth W. Witty did shoot Ramsey Waddell with a gun, if he did, and did thereby kill the said Ramsey Waddell, if he did, but if you further believe that at the time of so doing, if he did, or if you have a reasonable doubt thereof, that it reasonably appeared to the defendant Witty, as viewed solely from his standpoint at the time, whether such attack and the threatened injury therefrom was real or apparent, that Mrs. Kenneth W. Witty was being unlawfully and violently attacked by the deceased, Ramsey Waddell, acting alone or in connection with others, in such manner as that such attack, if any, reasonably threatened injury to the person of Mrs. Kenneth W. Witty, as viewed solely from the defendant's standpoint at the time (even though there was not aroused thereby in the mind of the defendant a reasonable expectation or fear of death or serious bodily injury to Mrs. Kenneth W. Witty), then the defendant would be justified in law in using all necessary and reasonable force or means at hand at the time to defend Mrs. Kenneth W. Witty from such assault and to continue doing so until all danger from such assault, real or apparent, as viewed solely from his standpoint at the time, had ceased to exist, provided you further believe or have a reasonable doubt thereof, that he first resorted to all other means

then reasonably at his hand, as viewed solely from his standpoint at the time to prevent such threatened injury, and provided you further believe, or have a reasonable doubt thereof, that he, the defendant, in repelling that attack upon Mrs. Kenneth W. Witty, if any, from the deceased, Ramsey Waddell, acting alone or in connection with others, used no more force than was reasonably necessary as viewed solely from the standpoint of the defendant at the time, to protect the person of Mrs. Kenneth W. Witty from the assault so made. And if you so believe, or have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'Not Guilty.' "

It will be noted that the charge limited appellant's right to defend his wife against the attack, less than deadly, of the deceased, provided "he first resorted to all other means then reasonably at his hand" and "used no more force than was reasonably necessary."

It is appellant's contention that such charge was, under the facts here presented, too restrictive of his rights and, in keeping with that contention, he requested the following special charge, which was refused, viz.:

"In connection with the instructions heretofore given you, and as a part of the law in this case, by which you are to be governed in rendering your verdict, you are further instructed, that even though you should find and believe from the evidence beyond a reasonable doubt that the attack, if any, made upon the defendant's wife by the deceased, acting alone or in connection with others, was not of such a character or with such weapons as to cause the defendant Kenneth W. Witty to be in fear of his wife losing her life or suffering serious bodily injury by reason of such attack; nevertheless, if you find and believe from the evidence that in truth and in fact the deceased, either alone, or with others, was in the act of making an unlawful and violent attack upon Mrs. Bertha Witty, the defendant's wife, and that the defendant had no other reasonable or practical means of preventing such attack, then in such event, if you so find the facts to be, or if you have a reasonable doubt thereof, you are instructed that the defendant would have a right to shoot and kill the deceased Ramsey Waddell; and, if you find that the killing of the deceased Ramsey Waddell took place under the circumstances and conditions as above stated, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'Not Guilty.' "

The effect of this charge was to extend to appellant the right to defend his wife from the attack, less than deadly, of deceased, if he "had no other reasonable or practical means of preventing such attack."

The requested charge follows the language, in applicable details, as set out in Charge No. 2 in the case of Prater v. State, 155 S. W. (2d) 934, which we held in that case should have been given. Appellant insists that the Prater case is direct authority supporting his contention here. In the Prater case, the trial court had not submitted the right of Prater to defend against the lesser attack, as provided by Art. 1224, P. C. We held that the facts were sufficient to call for an application of that statute and that the Special Charge No. 2—or one of similar import—should have been given. In the instant case, the trial court did submit the defense accorded by Art. 1224, P. C. Therein lies a material distinction between the Prater case and this case.

The question before us for determination, then, may be stated as follows:

Where there is evidence showing that the accused shot and killed the deceased in defense of his wife against the attack, less than deadly, of the deceased, as provided by Art. 1224, P. C., and there is an absence of any testimony suggesting that other means were available to the accused to which he could have resorted to protect or defend his wife from such an attack, is the trial court authorized to require the jury to also find that the accused, in firing the fatal shot, used no more force than was reasonably necessary before the right of self-defense would be complete? Stated another way: When the right of self-defense arises under Art. 1224, P. C. and the only means available to the accused is to shoot his adversary, does the issue of the use of excessive force on the part of accused arise whereby the right of self-defense is destroyed?

It will be noted that the excessive force rule is not and never has been a part of or included within the provisions of Art. 1224, P. C. The only limitation against the justification and right of self-defense accorded by that statute is that "all other means must be resorted to for the prevention of the injury and the killing must take place while the person killed is in the very act of making such unlawful and violent attack." It appears, therefore, that if, by the terms of said statute, no other means were available to which resort could be had to prevent injury, no limitation of the right of self-defense under the statute would

arise. As Art. 1224, P. C. does not include within its provisions the excessive force rule, it becomes pertinent to ascertain by what authority it became a limitation upon the right of self-defense given by said statute.

Self-defense implies defensive and not offensive acts. When the acts of an accused cease to be defensive and take on the offensive, then he becomes the aggressor and is no longer acting in self-defense. 22 Tex. Jur., Homicide, Sec. 35, p. 431. It appears that it is upon this theory that the rule prohibiting the use of more force than necessary to repel an attack less than deadly arose, for if the accused used more force than reasonably necessary, he became, thereby, the aggressor. See Hughes v. State, 105 Tex. Cr. R. 57, 284 S. W. 952; Streich v. State, 78 Tex. Cr. R. 155, 180 S. W. 266; Holland v. State, 124 Tex. Cr. R. 348, 61 S. W. (2d) 838. The resort to all other means reasonably at hand, as contained in Art. 1224, P. C., ·is a limitation upon the right of self-defense under that statute. If that limitation is complied with, or no other means exist or are at hand, then the right of self-defense is complete under said statute. To apply the rule of excessive force in the exercise of that right of self-defense would destroy such defense.

In view of what has been said, it should be kept in mind that the rules stated have no application where the facts raise the issue that other means were available or where more force was used than was reasonably necessary, nor do the rules apply to the right of self-defense against an attack, real or apparent, which produces a reasonable expectation or fear of death or serious bodily injury—as to which no limitation applies; also that one is not required to retreat before the right of self-defense. It should be remembered, further, that the right of self-defense, under Art. 1224, P. C.—as heretofore pointed out—applies when one acts in defense of another to the same extent and in like manner as when one acts in defense of himself. See: 22 Tex. Jur., Sec. 73, p. 516.

In the light of the rules discussed, we are to ultimately decide the question before us—which is:

Under the facts here presented, was the trial court justified in making appellant's right to defend his wife against the unlawful and violent attack, less than deadly, of the deceased, to depend upon his resorting, first, to all other means then reasonably at hand and, second, to the use of no more force than reasonably necessary to·prevent injury to his wife? Or, was the appel-

lant entitled to have the jury instructed that, if he had no other reasonable or practical means of preventing the attack upon his wife than to shoot, he would be authorized to do so?

Obviously, the facts touching the defensive theory must be looked to.

Appellant testified that he heard a "racket" between Mrs. Waddell and his wife; that he went immediately in the direction thereof and when he reached a "thinned out place in the brush" and while sixty yards away, he saw the deceased and the other Waddells engaged in a violent attack or assault upon his wife, in which the deceased struck the wife a blow upon the chin with his fist while holding her around the neck with his arm; that appellant was not a strong man, but physically handicapped; that he fired a warning shot and "hollered" for them to "get off of that woman or I will kill you"—all before he fired the fatal shots. By this testimony, appellant contends that he resorted to all other means at his disposal to prevent killing the deceased and that the only means available to him by which he could protect his wife was to shoot.

It must be remembered that in determining whether a defensive issue is raised by the testimony, the courts are not concerned with the source, truth, or probative force of that testimony but are concerned only if there be testimony raising the issue.

There was no testimony suggesting that appellant had available to him other means to prevent the attack upon his wife. The State's testimony denied that there was an attack, at all, upon the wife, and that self-defense was an issue in the case.

Viewing the facts, then, from the standpoint of appellant, it is apparent that no other means were reasonably at hand to protect his wife save and except to shoot. The distance he was away from the parties strongly suggests that he could have resorted to no other means to prevent injury to his wife. The facts raising the issue of defense of the wife against the attack, less than deadly, of the deceased also showed that no other means were reasonably at hand or available to appellant to protect his wife but to shoot. Consequently, under the provisions of Art. 1224, P. C., appellant was, under the facts presented, entitled to have the jury instructed in accordance with his requested charge. Fleming v. State, 274 S. W. 616, 101 Tex. Cr. Rep. 19.

The facts upon which the conclusion is reached that no other means were reasonably at hand to prevent the injury to his wife also answers the question of the use of excessive force, for to shoot the deceased was the only force available to him which he could have used—as viewed from his standpoint—to protect his wife from the attack of the deceased. The force, and only force, available to appellant being to shoot, such could not be divided into or exercised in degrees.

We are constrained, therefore, to hold that the facts do not authorize submission of the use by appellant of excessive force as a condition precedent to the right to shoot in defense of his wife, and that the special requested charge should have been given.

Appellant, by special requested charge, contends that he was entitled to have the jury instructed in connection with the charge submitting his right to defend his wife against the joint and several attacks of the deceased threatening death or serious bodily injury, upon the presumption arising from the use of a deadly weapon by the deceased, as set forth by Art. 1223, P. C.—this upon the theory that the striking of the wife by the deceased with his fist while holding her around the neck with his arm constituted an attack upon the wife by the deceased with a deadly weapon.

A deadly weapon is one which, from the manner used, is calculated to produce death or serious bodily injury. We know of no case holding that a person's fist is a deadly weapon. Circumstances and conditions may arise whereby it might be, but we are unable to agree that such is true in the instant case. Accordingly, we hold that the presumption arising under Art. 1223, P. C. by the use of a deadly weapon by the deceased was not raised by the testimony.

Bill of Exception No. 3 presents the following:

The witness Joe Riggs testified that just prior to the homicide, he, in company with one Southerland, passed the Waddell home; that he saw Mrs. Witty, wife of the appellant, at the mail boxes and that she appeared to be nervous; that she would turn and look over her left shoulder toward and in the direction of the brush row from which appellant shortly thereafter fired the fatal shots. Appellant's objection to such testimony as being irrelevant and immaterial and as being the acts and conduct of third parties out of his presence was overruled.

Thereupon, the State, for the purpose of qualifying the witness to give said testimony, proved by him that he had had considerable combat experience during the war; that he had seen many people under stress, strain, and excitement over impending events and events that were happening. Based upon that experience, the witness expressed the opinion that, at the time, Mrs. Witty's demeanor was one of stress and excitement and the cause of his having noticed her.

To this testimony, appellant renewed his objection, which was overruled. However, the trial court instructed the jury that the testimony was admitted for the purpose of qualifying the witness to testify.

Under the facts here presented, the State was authorized to prove by the witness that Mrs. Witty appeared to be nervous on the occasion mentioned, especially in view of the fact that she testified as a witness to the happenings and events occurring just prior to the homicide.

But the alleged qualifying testimony of the witness went further than the purpose for which it was admitted, for, by it, the witness was expressing an opinion to the effect that Mrs. Witty was expecting something to happen. As a general rule, the opinion of a witness is not admissible to interpret the meaning of the acts, conduct, or language of another. Ochoa v. State, 87 Tex. Cr. R. 318, 221 S. W. 973; Glover v. State, 126 Tex. Cr. R. 56, 70 S. W. (2d) 155; Pounds v. State, 142 Tex. Cr. R. 52, 150 S. W. (2d) 798.

Other bills of exception appearing have been examined and are overruled without discussion.

At the time of the submission of this case, the State moved to strike from consideration the bills of exception appearing in the transcript because they were not filed in the trial court within the time allowed by law. Since that time, a supplemental transcript has been filed, which evidences that the bills of exception were timely filed.

For the errors appearing, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The State insists in its motion for rehearing that for various reasons we were in error in predicating a reversal upon the refusal to give the requested special charge set out in our original opinion. It is sought to differentiate the Prater case, 155 S. W. (2d) 935 from the present one in so far as the applicability of the requested charge is concerned. To our minds the facts of the two cases do not lead to such distinguishment. The principle involved is the same. We gave the question close attention before releasing our original opinion, and are inclined to adhere to the view then expressed. To attempt to write further on the subject would only multiply words, and add nothing, we think, to the reasons advanced as supporting our original conclusion.

The motion for rehearing is overruled.