## C. H. ROPER V. STATE.

No. 24598. March 29, 1950.
Rehearing Denied June 14, 1950.

*Polk Shelton* and *Dan Moody*, Austin, for appellant.

*Bob Long*, District Attorney, *J. J. Brady, Jr., Jerome M. Smith*, Assistants District Attorney, and *George P. Blackburn*, State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was convicted of murder without malice, the jury

assessing his punishment at five years in the penitentiary and rejecting his plea for suspension of sentence.

The indictment charged the killing of McCreary Crow, with malice, by shooting with a gun.

The shooting occurred in the early morning hours just outside of the home of appellant and his wife. The deceased at the time of the shooting was at a point near the southwest corner of appellant's house, some 15 feet from the front door. Appellant fired twice with a high-powered hunting rifle from a distance of about 30 feet. Both bullets struck the deceased, and his death resulted therefrom.

Mrs. Crow, the wife of deceased, and Mrs. Roper, appellant's wife, were present and in close proximity to the deceased at the time of the shooting and of the incidents prior thereto.

That night, prior to the killing, appellant and his wife had entertained with a dinner party at a night club celebrating their first wedding anniversary, the deceased and his wife being among the four married couples who were guests at the party.

All of the guests at the dinner except one couple, after leaving the club, finally gathered at appellant's home and the party continued there. After about 30 minutes, two of the couples, the Johnsons and the Dobies, went home, leaving at appellant's home the deceased and his wife and appellant and his wife.

Some of the party were drinking at the club, and a small amount of liquor was secured by appellant on the trip after leaving the club, and was taken by appellant to his home. According to some to the witnesses appellant was intoxicated, and there is testimony in the record that the deceased was drunk.

There was no character of disturbance or evidence of hard feelings between appellant and the deceased until some time after the Johnsons and Dobies had gone.

According to the testimony of appellant and his wife, deceased assaulted both of them in their home, spilled the contents of a cabinet drawer on the floor, knocked appellant down by striking him over the eye, drove his fist through the wall, raked everything off the top of a dresser, and twice knocked appellant's wife down, all without cause or provocation.

Appellant further testified that more than once he asked the deceased to leave; that deceased and his wife finally went outside the house; that shortly thereafter he heard the deceased say "Open that door or I will knock it in;" that he then picked up his pistol and upon deceased's re-entering the house told deceased to get out; that he followed the deceased outside but then returned into the house and put the pistol away. From this point we quote appellant's testimony as to the shooting and the events immediately preceding it.

"Then I heard something that caused me to take some action; I heard my wife scream 'Don't. As to the manner in which she screamed, it was a high-pitched tone of voice, as though she were scared. Then I reached in the cabinet and picked up a rifle and run out there. There was a rifle sitting in that cabinet; the door was open; I had put the pistol in there. I picked up the rifle and run outside. Referring to the diagram, I would say I ran outside about in this area right along here (indicating a point due west of the front door). I would guess that was about 20 feet from the living room door; * * * When I got out there I saw my wife right along in this area, right along here (indicating a point near the southwest corner of the house), and Mr. Crow right along in the same area, and Mrs. Crow right along in this area here, I would say, a little further back towards the door. I saw Mr. Crow do something when I ran out there; he knocked my wife down and kicked her. She fell away from the sidewalk. I saw him knock her down and kick her. Then he started towards me. I thought he was going to hit me, catch me. He made a statement; he said, 'I will get you now.' He came towards me. He just stepped over or on my wife, I don't know which. I saw him when he picked up his foot; I thought he was going to kick her again. When he said 'I will get you now' and gave indication he was going to do something, that disturbed me; I was already disturbed. He did come towards me; I thought he was either going to beat me to death or kill me. * * * He knocked my wife down, kicked her in the side and came towards me, stepped on or over her, and when I thought he was going to kick her again, I shot. * * * At the time I shot I thought he planned to do serious bodily injury to me. * * * The man had knocked me down once; he had knocked my wife down twice in the house and had knocked her down out in the yard, and I had seen him kick her there on the ground once. Then he had made some motion, fixing to kick her again and said, 'I will get you next', and that is about the time the shooting occurred."

As to the events outside after appellant left the house the second time, Mrs. Roper, the wife of appellant, testified:

"After we got outside, Mr. Crow looked like he was going on home, so Cliff walked on back into the house; that is Dr. Roper, my husband. So I was standing out there and I asked his wife if she knew how to drive, and she said yes, and I said, 'Well, do you have the keys to the car', and she said 'Yes.' I said, 'Why don't you just take him on home,' and he told me, he said, 'No, I am not going home', and he started back in the house, and I said not to, to go on, and he knocked me down and kicked me. * * * Then he started back in the house again, and I said 'Don't'; he knocked me down. I think it was on the left side where he hit me then. * * * When he hit me I fell to the ground; I was clear off the sidewalk when I fell. * * * After Mr. Crow knocked me down, he struck me again. He struck me with his foot, and it was under my left breast where he struck me; he kicked me under my left breast. At that time I was lying on the ground. I do not know when my husband came out of the house. I did not hear anything said by Mr. Crow or by my husband; if anything was said I don't remember what it was. After I was kicked there was something said. Mr. Crow said, 'I am going to get you next.' He started over me; he went over me; he went forward. Then I heard a shot or shots."

Mrs. Crow, the wife of the deceased, testified for the state, and according to her version of the affair, the killing was without justification and no question is raised as to the sufficiency of the evidence from the standpoint of the state to sustain the jury's verdict. According to Mrs. Crow's testimony, as viewed in its most favorable light to appellant, the conduct of the deceased, though not of such character as would justify the killing, sustains and explains the jury's finding of a killing in the heat of passion arising from an adequate cause.

Appellant relies for reversal of his conviction upon the overruling of his exceptions to the court's charge, and the court's refusal of his request for additional instructions on his affirmative defense.

The facts stated, from the standpoint of the defendant, being deemed sufficient for an understanding of appellant's contention in regard to the charge, the facts in detail from the state's standpoint are omitted with the statement that they are sufficient to sustain the conviction of murder without malice.

In his charge to the jury, in connection with the abstract

statement of the law of self-defense, defense of another, and defense of habitation against an attack giving rise to apprehension of death or serious bodily injury, the court applied the law as follows:

"(b) You are further charged that if you believe from the evidence, beyond a reasonable doubt, that the defendant, C. H. Roper, in the County of Travis, State of Texas, on or about the 18th day of July, 1948, did kill the said McCreary Crow by shooting him with a gun, as charged in the indictment, but you believe from the evidence, or have a reasonable doubt thereof, that at such time the said McCreary Crow, the deceased, was making, or about to make, what appeared to the defendant, as viewed from his standpoint at the time, and from his standpoint alone,—an unlawful attack upon the defendant or his, defendant's wife, or his home, AND THAT THE DEFENDANT OR HIS WIFE WAS IN IMMEDIATE DANGER OF LOSS OF LIFE OR SERIOUS BODILY INJURY, or injury to his home, and that the defendant shot the said McCreary Crow while such fear and apprehension continued, then the defendant had the right to defend himself or his wife, or his home, and, IF NECESSARY, kill the said McCreary Crow, regardless of whether in fact the said defendant, C. H. Roper, or his wife, was in any real danger of either loss of life or of serious bodily injury being inflicted upon him or her by the said McCreary Crow and regardless of whether the said McCreary Crow was in fact making any attack upon the defendant or his wife, if the defendant, as viewed by him from his standpoint at the time, and from his standpoint alone, reasonable believed that the said McCreary Crow was in the act of making, or about to make, an unlawful attack upon him or his wife, or his home, and that, therefore, he, the said defendant, or his wife, was in danger of either loss of life or of serious bodily injury, or of injury to his home; and if you so believe, or have a reasonable doubt thereof, you will acquit the defendant, and say by your verdict 'Not Guilty'."

Appellant excepted to such paragraph of the charge on the ground that it was too restrictive of his right of self-defense and allowed him to defend only against an attack which the jury might believe was calculated to inflict death or serious bodily injury.

The court, in another paragraph of the charge, dealt with the law of self-defense against a lesser attack and was here dealing only with the right of appellant to defend against an

attack giving rise to apprehension of death or serious bodily injury.

Appellant's further exception was on the ground that such paragraph of the charge required THE JURY to believe that appellant or his wife was in actual or immediate danger of loss of life or serious bodily injury before the jury would be warranted in acquitting the appellant under the law of self-defense.

We do not agree that the charge is subject to such construction. The preceding phrase "what appeared to the defendant, as viewed from his standpoint alone" and the succeeding statement "while such fear and apprehension continued" seem to apply to the danger of loss of life or serious bodily injury as well as to the unlawful attack.

In any event, the above quoted paragraph of the charge, construed as a whole, fully informed the jury of appellant's right to act upon the appearance of danger as viewed from his standpoint at the time.

Error cannot be predicated upon a phrase taken from a paragraph of a charge, which as a whole correctly informs the jury as to the law applicable to the case. See Stroud v. State, 127 Tex. Cr. R. 486, 77 S. W. 2d 237.

In paragraph 9 of the court's charge, the jury was instructed as to the law of self-defense and defense of another against an unlawful and violent attack not of such character as to create an apprehension of death or serious bodily injury as provided in Art. 1224, P.C.

Such provision of the law was applied to the facts of the case in Sub-paragraph (b) of Paragraph 9 as follows:

"(b) Now, therefore, you are instructed that if you find and believe from the evidence in this case, or have a reasonable doubt thereof, that at the time of or just prior to the killing, if any, the deceased had made or was in the act of making an unlawful and violent attack upon the defendant or upon his wife and that such attack, if any, did not create in the mind of the defendant a reasonable apprehension or fear of death or serious bodily injury to himself or to his wife, as viewed from his standpoint alone, still, the defendant would have the right to defend himself or his wife or either of them against such unlawful and violent attack and to kill deceased, if he did, PROVIDED ALL OTHER REASONABLE MEANS AT HAND

WERE RESORTED TO BY THE DEFENDANT FOR THE PREVENTION OF THE INJURY save retreat and provided further that the killing, if any, took place while the deceased was in the very act of making an unlawful and violent attack upon the defendant or his wife or either of them, and in case you so find or have a reasonable doubt thereof, you will acquit the defendant."

By many exceptions addressed to this particular paragraph and to the charge generally, appellant questions the court's limitation of appellant's right of self-defense by the instruction "provided all other reasonable means at hand were resorted to by the defendant for the prevention of the injury."

Appellant contends that reversible error was committed by the court in this regard, by including such limitation in the charge, over his exception, and in not instructing the jury in lieu thereof, in substance, that if they believed that at the time of the shooting, it reasonably appeared to appellant that the deceased was in the act of making an assault upon appellant's wife and that from the relative positions of appellant and the deceased and the distance between them at the time, the only means appellant had of resisting such assault was to shoot the deceased, or if they had a reasonable doubt thereof, that they should acquit appellant.

As we understand appellant's contention, it is that the undisputed facts in the record affirmatively show that at the time of the shooting, appellant being a distance of some 30 feet from the deceased, there were available to him no other reasonable means at hand to which he could resort to prevent the deceased from again kicking appellant's wife, and for such reason it was error for the court to require the jury to find that he resorted to all other reasonable means at hand before he could avail himself of such law of self-defense against such attack less than deadly.

In the first place, we are not convinced that there was no issue as to the existence of other means. It is true that appellant at the very time of the shooting was not within reach of the deceased so as to enable him, by resort to physical force, to prevent a further attack upon Mrs. Roper. But the evidence is such that the jury may have believed that he placed himself in such position after picking up the rifle for the purpose of vantage he then having the intent to shoot the deceased rather than to approach him. Also the jury might have believed that

appellant could have prevented the injury to his wife by presenting the rifle or firing a warning shot before taking the life of the deceased.

But assuming that appellant had no intent to shoot prior to reaching the point from which he fired, and that no such other means would have been effective as viewed from his standpoint at the time, it occurs to us that the charge as given fully protected the rights of appellant to act in defense of his wife and himself against an attack less than deadly.

Art. 1224, P.C., defines the right of self-defense against such milder attack, and contains the proviso that in such cases "all other means must be resorted to for the prevention of the injury."

The court gave said article in charge to the jury, and in applying same, correctly incorporated the additional provisions requiring the "other means" to be "reasonable means at hand" and excepted from the proviso the means of defense by retreat.

In Bryant v. State, 47 S.W. 373, a similar charge was under attack on much the same ground as here advanced by appellant.

In overruling such exception, this court said:

"* * * it is insisted that appellant had no other means to which he could have resorted besides retreating, and that the charge of the court, referring to other means as used in the statute, was hurtful to him. If there was no other means to which the party could resort, then, of course, the jury, under the charge, would not have required him to resort to other means; but if they believed he could have arrested the assault being made on him by deceased by other means, such as drawing and presenting his pistol and commanding the deceased to halt, then, obviously, the jury, under the charge of the court, would require him to resort to such other means."

Appellant relies upon the holding of this court in the much more recent case of Witty v. State, 150 Tex. Cr. R. 555, 203 S.W. 2d 212, as supporting his position.

In the Witty case the shots were fired from a distance, according to the defensive theory, in defense against an attack other than one threatening death or serious bodily injury then

being made by the deceased and others upon the wife of the defendant Witty. Prior to firing the fatal shot, according to the testimony of the defendant, he "fired a warning shot and hollered, 'get off that woman or I will kill you.' "

In charging the jury, the court limited Witty's right to defend his wife against such assault by requiring the jury to believe or have a reasonable doubt that he had first resorted to all other means then reasonable at his command and THAT HE USED NO MORE FORCE THAN WAS REASONABLY NECESSARY.

The exception to such charge was that same was too restrictive of the defendant's rights, and a charge was requested to the effect that if the jury believed that the defendant had no other reasonable or practical means of preventing the attack, his right of defense against such attack by killing was complete.

This court reversed the conviction holding that it was error to charge on the use of excessive force, the force and only force available to Witty being to shoot, which could not be divided into or exercised in degrees. It was noted in the opinion that the excessive force rule was not a part of or included within the provisions of Art. 1224, P.C., the only limitation accorded by the statute being the resort to all other means for the prevention of the injury.

And we there held that the requested charge to the effect that the defendant's right to defend his wife from the attack less than deadly was complete if he had no other reasonable or practical means of preventing such attack.

The following excerpt from the opinion is relied upon to support appellant's contention:

"Viewing the facts, then, from the standpoint of appellant, it is apparent that no other means were reasonably at hand to protect his wife save and except to shoot. The distance he was away from the parties strongly suggests that he could have resorted to no other means to prevent injury to his wife. The facts raising the issue of defense of the wife against the attack, less than deadly, of the deceased also showed that no other means were reasonably at hand or available to appellant to protect his wife but to shoot. Consequently, under the provisions of Art. 1224, P.C., appellant was, under the facts pre-

sented, entitled to have the jury instructed in accordance with his requested charge."

We cannot agree that the holding of the court in the Witty case overrules or is in conflict with the holding in Bryant v. State, supra, nor do we agree that under the holding in the Witty case, the trial court is required to omit the language of Art. 1224, P.C., which requires resort to other means to prevent injury before killing and to substitute therefor the requirement that the jury find that no such other means were reasonably at hand.

From the opinion as a whole, the Witty case holds that the requested charge should have been given because the facts did not authorize submission of the use of excessive force.

Such construction is demonstrated in the following quotation from the opinion: "We are constrained, therefore, to hold that the facts do not authorize submission of the use by appellant of excessive force as a condition precedent to the right to shoot in defense of his wife, and that the special requested charge should have been given."

Here the element of excessive force was not charged upon and, of course, should not have been.

The charge of the court fairly presented the separate affirmative defenses of appellant against the two classes of unlawful attack in accordance with the applicable law.

It was within the province of the jury to reject the version of appellant and his wife that appellant acted in defense of himself, his wife and his home, from the attack of the deceased, and to accept the version of the state as testified to by the wife of the deceased that no attack was in progress and that the killing was without justification.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant has filed a very earnest motion for rehearing. In

his brief he summarizes the contention emphasized in his motion for rehearing under four heads, which, in the view of the writer, present but two contentions.

The first complaint is that the court so worded the charge that the right to defend against such an attack was made to depend upon the jury's believing that appellant, or his wife, was in immediate danger of loss of life or serious bodily injury. The second section relates to the contention that the court erred in so wording the charge that the right to kill, in defending against such an attack, was made to depend upon the jury's believing that it was necessary to kill in order to protect appellant or his wife from loss of life, or serious bodily injury. The third section relates to his complaint that the court did not affirmatively charge the jury on his defense that his only means of protecting his wife from the assault, or threatened assault, by the deceased, was to shoot. The fourth question summarized relates to his contention that the court erred in failing to instruct the jury that the danger, or apparent danger, is to be judged from the standpoint of the person who comes to the defense of another, and in charging the jury that if there is a reasonable doubt that the assault did not create in the mind of appellant a reasonable anticipation or fear of death or serious bodily injury to himself or his wife, that appellant would not have the right to kill his assailant unless appellant had first resorted to all other reasonable means at hand save retreat.

These questions and the authorities relied upon chiefly by appellant are discussed in the original opinion. Normally we would not feel called upon to enlarge upon that discussion. To the writer the opinion is very clear and sufficiently reviews the holdings of the court on the subject. Appellant's attorneys, however, have made extensive investigation of the authorities and ably presented their contentions, both by written and oral argument. Such devotion to duty to the client is always appreciated by this court. If we can add to our reasons stated in the original opinion we feel called upon to do so.

In his original brief appellant said that if the testimony is such as to raise the issue that no other means was available than to shoot and kill, or if the evidence does not suggest that any other means were available, then the appellant was entitled to have the jury affirmatively told that he did have the right to shoot and kill in order to avoid the injury. It is further said that a charge to the effect that he had such right only if

all other means had first been exhausted would be an improper limitation, under the circumstances, upon his right of self-defense. (Original brief, p. 24.) He further claims that the testimony raised an affirmative defense in that appellant did not have any means at hand to prevent deceased from kicking his wife a second time except to shoot.

Among the cases relied on by appellant in the original submission and in his motion for rehearing are Prater v. State, 142 Tex. Cr. R. 626, 155 S.W. 2d 934, and Witty v. State, 150 Tex. Cr. R. 555, 203 S.W. 2d 212.

In the Prater case this court merely held that under the evidence of that case the jury "should have been advised as to the principle of law announced in Art. 1224, P.C." No charge was given under Art. 1224, P.C., and we held that under the evidence the jury might have reached the conclusion that the attack on the defendant was unlawful and violent, but not of a nature to create in defendant's mind an apprehension of death or serious bodily injury. We then said that: "If such conclusion should have been reached by the jury they were without information as to the law under such a finding."

In the Witty case the charge given under Art. 1224, P.C., was contested on the question of resort to other means and the use of more force than necessary. Appellant there relied on the Prater case and, in discussing it, we said of the Prater case that: "We held that the facts were sufficient to call for an application of that statute (Art. 1224, P.C.), and that the special charge No. 2—or one of similar import—should have been given.

It appears to us that the statement of this court, in the Witty case, to the effect that there is a material distinction beween the Prater case and the Witty case, coupled with the statement which follows to the effect that the question before the court for determination in the Witty case was: "Does the issue of the use of excessive force arise under Art. 1224, P.C., where the only means available to the accused is to shoot?" refute the claim that the two cases support appellant's contention in the instant case.

The resort to all other means reasonably at hand, as contained in Art. 1224, P.C., is a limitation on the right of self-defense under that statute. If that limitation is complied with, or if there are no other means at hand, then only the right of self-defense is complete under the statute. From all the decisions

mentioned it seems clear that under Art. 1224. P.C.. when applicable, the jury should be instructed that the accused should be required to resort to all other means reasonably at hand before taking a life. A charge which requires a finding that no such other means existed, of necessity, includes the limitation mentioned by the statute and is sufficient. It is not an affirmative defense, but is a limitation on the right to kill in defense against the character of assault named in the statute.

We have again examined the charge of the court, in view of the complaint that the defendant's right .of defense was made to depend upon the jury's believing that it was necessary to kill in order to sustain the plea of self-defense. We are so thoroughly impressed that the court made it clear that the jury was to consider the entire matter from the standpoint of the appellant alone, at the time of the homicide, that we do not consider a further discussion of this question to be necessary. As frequently stated, the charge will be looked to as a whole and if appellant's rights on any matter have been clearly protected the charge should be approved.

The facts of this case have been sufficiently treated in the original opinion and are not further discussed. In this case, as in most appeals, appellant has been very diligent and insistent on securing his advantage of each and every provision of law. We are frequently reminded that if the parties were always as diligent to observe the law as they are insistent that this court follow their view of it, there would be far less drunkenness, less conflict between parties and, consequently, fewer lives taken as a result thereof. This court has no equitable powers. It is a court of law and not of equity. It is the sworn duty of the judges to follow the law and we desire to do that at all times. We have our personal regrets, as do other men when confronted with a conviction of one capable of a useful life. The appellant is a promising young dentist who was celebrating his first wedding anniversary and took the life of his friend while both were intoxicated. Whatever circumstances were admissible in the case would have a part only in the impression made on the jury, whose duty it is to weigh such matters. The decision of the jury on questions of fact and the punishment to be imposed is always final From such decision there is no appeal. If the case has been tried according to law no reversal may be expected.

The evidence in the instant case was admissible and suf-

ficient to sustain the jury's verdict. We find no reversible error in the trial of the case and appellant's motion for rehearing is overruled.